LUDOWICI-CELADON CO. v. McKINLEY.

1. CONTRACTS—PERFORMANCE AS ACCEPTANCE OF AN OFFER.
   The contract of a party in making performance in pursuance of a definite proposition is an acceptance of the proposition.

2. SAME—IMPLIED ACCEPTANCE OF OFFER.
   An acceptance of an offer to contract may be implied from the acts and circumstances of the parties and may be manifested wholly or partly by written or spoken words or by other acts or conduct.

3. SAME—ACCEPTANCE OF OFFER—SPECIAL TILE.
   Defendant's signed offer to purchase special roofing tile from plaintiff, which stated that it was good for 30 days and was subject to approval of plaintiff's executive department, was approved by manufacture of the tile and shipment of a portion to defendant.

4. SAME—IMPLIED ACCEPTANCE—PERFORMANCE.
   An offer to buy becomes a binding agreement when the offeree performs an act from which acceptance may be implied.

Acceptance implied from performance or from facts and circumstances, see 1 Restatement, Contracts, § 63,

5. SAME—ACCEPTANCE IMPLIED FROM CONDUCT AS WELL AS WORDS.
   Acceptance of an offer may be implied from conduct as well as from words where the offer prescribes ·no specific form of acceptance.

6. SAME—ACCEPTANCE—PARTIAL PERFORMANCE.
   The shipment of a part of an order of goods is an acceptance of the whole order.

7. SAME—INDIVISIBLE OFFER.
   The acceptance of an indivisible written offer binds both parties to all the conditions and provisions of the offer.

8. SAME—SPECIAL TILE—PARTIAL PERFORMANCE—MUTUALITY OF OBLIGATION.
   Plaintiff who manufactured special roofing tile pursuant to a written order signed by defendant, delivered a part thereof and tendered the remainder was entitled to damages because of buyer's refusal to accept the remainder; there being mutuality of obligation.

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted October 8, 1943. (Docket No. 68, Calendar No. 42,514.) Decided November 29, 1943.

Assumpsit by . Ludowici-Celadon Company, an Illinois corporation, against Burton C. McKinley and another individually and doing business as B. C. McKinley Company, for price of roofing material. Judgment for defendants. Plaintiff appeals. Reversed.

*Arthur J. McIntyre,* for plaintiff.

*John Hal Engel,* for defendant.

BUSHNELL, J. Appellant, Ludowici-Celadon Company, of Chicago, an Illinois corporation, is engaged in the business of manufacturing and selling roofing material and has a manufacturing plant located in New Lexington, Ohio. Appellees, B. C. McKinley and Nathan McKinstrie of Detroit, Michigan, are

coupartners, doing business as B. C. McKinley Company, and are engaged in the roofing business. As subcontractors, they agreed to furnish material and labor for the construction of a new roof on an addition to one of the buildings of the Michigan Bell Telephone Company, and for the repair of a roof on an old building.

Appellant's salesman, Gudmund Jacobs, computed with defendants the quantity of "Imperial Intermediate Tapered Mission Tile" necessary to complete these jobs, by reference to the plans and specifications, and it was mutually determined that the amount of tile required would cost $2,526. In this computation 18 per cent. of the tile was allowed to cover breakage. A proposal to furnish the tile at the agreed cost of $2,526 was signed by the B. C. McKinley Company and Jacobs on April 14, 1941, which contained the following language:

"This proposal is good for 30 days. Its acceptance will constitute a contract, subject to the approval of our executive department at Chicago."

Subsequently defendants received a letter from appellant, signed by one R. E. Ryan and dated April 17, 1941, which read:

"We acknowledge, with thanks, receipt of our proposal dated April 14th, signed. We are passing this to our executive department for consideration and attention."

Nothing further in writing was received from appellant, but on August 20, 1941, defendants were billed $1,356.30 for tile that had been delivered, and on October 23d they paid appellant $1,000. On October 28th they were billed $75.26 for other tile, and on November 25th they paid $356.30, and on December 23d, $75.26.

B. C. McKinley testified that the amount of tile which was delivered was sufficient to finish the job, and that he then told plaintiff, "we did not need any more." Plaintiff, however, had manufactured sufficient tile to cover the entire amount of the proposal and tendered delivery of the balance to defendants. Either the parties overestimated the amount of the required or there was not as much breakage as was anticipated. In any event, plaintiff had remaining in its hands specially manufactured tile, of an outmoded style, for which they had no market and which was not needed by defendants.

McKinley made the following admission on cross-examination:

"I did figure I would have to pay the plaintiff more than $2,200. I figured I would have to pay him the full $2,526. That is what I agreed to pay. I agreed to pay $2,526. I agreed to pay him that and I figured I would have to pay him that because I signed this contract, otherwise I would not have signed it."

Plaintiff brought suit for breach of contract, claiming $1,000 damages. Trial by jury was waived and the trial judge held that, because of a lack of acceptance of defendants' order by the executive department of plaintiff corporation, no recovery could be had.

The proposal which was signed on April 14, 1941, was merely an offer to purchase, because it was "subject to the approval of" the seller's executive department. Thus, the sole question presented is whether the offer to purchase tile of the value of $2,526 was accepted by the seller so as to effectuate a binding contract.

In *Malooly* v. *York Heating & Ventilating Corp.*, 270 Mich. 240, 253, the court quoted from *Lang &*

*Gros Manfg. Co.* v. *Fort Wayne Corrugated Paper Co.* (C. C. A.), 278 Fed. 483, 487, as follows:

"The contract of a party in making performance in pursuance of a definite proposition is an acceptance of the proposition."

It was there held that "an acceptance of an offer to contract may be implied from the acts and circumstances of the parties." This same rule is expressed in 1 Restatement, Contracts, § 21, as follows:

"The manifestation of mutual assent may be made wholly or partly by written or spoken words or by other acts or conduct."

The written proposal was "subject to the approval" of the executive department of plaintiff corporation. When it manufactured the special tile and shipped a portion thereof to defendants, such acts and conduct constituted an approval of the proposal. This view of the law is supported by *Lewis A. Crossett Co.* v. *American Polish Corp.*, 97 Conn. 485 (117 Atl. 415) ; *Smith* v. *Droubay,* 20 Utah, 443 (58 Pac. 1112); and *Wood & Brooks Co.* v. *Hewitt Lumber Co.*, 89 W. Va. 254 (109 S. E. 242, 19 A. L. R. 467). A contrary view is expressed in *Chickamauga Manfg. Co.* v. *Augusta Grocery Co.*, 23 Ga. App. 163 (98 S. E. 114), and *Hampton Cotton Mills* v. *Hershfeld,* 121 Misc. 518 (201 N. Y. Supp. 556).

The West Virginia court said in the *Wood Case*:

"An offer to buy becomes a binding agreement when the offeree performs an act from which acceptance may be implied. 35 Cyc. p. 52; *Colgin* v. *Henley,* 6 Leigh (33 Va.), 85. It follows, therefore, that since plaintiff's offer prescribed no specific form of acceptance, it may be implied from conduct as well as from words. 1 Page, Contracts, § 188;

Clark, Contracts, p. 24.  *  *  *  The law is settled that the shipment of a part of an order of goods is an acceptance of the whole order."

A somewhat comparable situation is disclosed in *Columbia Weighing Machine Co.* v. *Vaughan*, 123 Kan. 474 (255 Pac. 973). In that case Vaughan signed an order for a weighing machine, and included in the order was this statement:

"It is understood you are to supply us with any mechanical parts required for the machine for a period of five years without charge. Whenever we may want a part, we are to inform you by registered mail.  *  *  *  All orders are subject to acceptance of the company."

No letter was written by the Columbia Company to Vaughan accepting the order, but plaintiff shipped the machine. When action' was brought to recover the purchase price, Vaughan interposed the defense that his offer had not been accepted by plaintiff so as to become a binding contract to also furnish parts for five years without charge. The court held that acceptance may be shown by any act or conduct clearly evincing an intention to accept the offer made and that delivery of the merchandise ordered clearly evinces the intention to accept. It was held that the offer was not divisible with respect to the mechanical parts required, and that, when plaintiff accepted the offer, it was accepted in its entirety, and that it could not be accepted in any other way. Therefore, it was held that both parties became bound by all the conditions and provisions of the written offer.

In the instant case, plaintiff manufactured the tile, delivered a part thereof, and tendered the remainder. Had the plaintiff seller refused to deliver the remainder, the defendant buyer' could have recovered damages for the breach of the contract.

It must, therefore, follow that the seller is likewise entitled to recover damages because of the buyer's refusal to accept the remainder of the tile.

The judgment entered in the trial court is vacated and the cause is remanded for the entry of a judgment in accordance herewith.   Costs to appellant.

BOYLES, C. J., and CHANDLER, NORTH, STARR, WIEST, BUTZEL, and SHARPE, JJ., concurred.